J .P. BRASHEARS, Respondent, v. THE WESTERN UNION
TELEGRAPH COMPANY, Appellant.

St. Louis Court of Appeals, May 12, 1891.

1. Telegrams: NEGLECT TO DELIVER: ACTION FOR PENALTY. The
penalty, prescribed by section 883 of the Revised Statutes of 1879,
for the failure of a telegraph company to transmit a telegraphic
message, is not restricted to a failure to transmit the message over
the wires, but may be incurred for a failure of the company to
deliver the message to the person to whom it is addressed.

2. ———: DELIVERY. A telegraph company, in the absence of a
special contract to the contrary, is bound to make a copy of the
message and deliver it to the person addressed, if accessible.
Transmitting the message to such person through a telephone is
not a sufficient compliance with its contract.

3. ———: ACTION FOR PENALTY : WAIVER BY ADDRESSEE. The person
addressed cannot waive the right of the sender of a telegram to
the prescribed penalty for non-delivery ; and though the person
addressed resides with a brother, who has directed the telegraph
company not to deliver messages at his residence on Sundays, the
rights of the sender of a message on a Sunday will not be affected
by this circumstance, if he is ignorant of it.

4. ———: ———: UNKNOWN SPECIAL REGULATIONS OF TELEGRAPH
COMPANY. Though the telegraph company has a special rule at
the place of delivery for a free delivery of messages within a
specified distance, and an extra charge for delivery beyond that
distance, the right of the sender of a telegram to the prescribed
statutory penalty for non-delivery is not affected by this regula-
tion, if he is ignorant of it, and the non-payment of the extra
charge by him, where the person addressed resides beyond the free
delivery limits, will, therefore, be no defense to his action for the
penalty in the absence of proof of his knowledge of the regu-
lation.

5. Witnesses : CHILDREN. At common law a child under the age of
fourteen years is *prima facie* incapable of testifying, but this rule
is modified by the statute (R. S. 1889, sec. 8925), providing that a
child of ten years is incompetent to testify, unless the court satis-
fies itself that it is capable of receiving just impressions of the
facts concerning which it is called to testify.

*Appeal from the Monroe Circuit Court.*—Hon. Thos. H. Bacon, Judge.

Affirmed.

*Charles E. Yeater*, for appellant.

(1) The telephone is a medium for the rapid communication of intelligence, recognized and regulated by the laws of the state under the same statutory provisions as those prescribed for the regulation of the telegraph, and the agent of the defendant telegraph company, under the facts in this case, properly resorted to the telephone in order to forward the plaintiff's message. R. S. 1889, ch. 42, art. 5; *Chesapeake, etc., Co. v. Tel. Co.,* 7 Atl. Rep. 809; s. c., 66 Md. 399; *State ex rel. v. Tel. Co.,* 36 Ohio St. 309. (2) By the message form the plaintiff agreed that the dispatch was to be delivered free only in the free-delivery limits of the Hannibal office; and the court, having found that free delivery in Hannibal within ten blocks was a reasonable regulation, and that the addressee lived beyond these limits, erred in declaring that part of the message form inapplicable, because such distance of ten blocks was not expressly set forth therein ; and the defendant, not being required to make free delivery by messenger in writing of the message, which on its face required immediate delivery, properly forwarded the same over the telephone line. *Tel. Co. v. Henderson,* 30 Am. & Eng. Cor. Cases (Ala.) 621; s. c., 7 Rep. 419; *Given v. Tel. Co.,* 24 Fed. Rep. 119; s. c., 8 Am. & Eng. Cor. Cases, 107; *Hewlitt v. Tel. Co.,* 28 Fed. Rep. 184; *Tel. Co. v. Harding,* 3 N. E. Rep. 174; s. c., 10 Am. & Eng. Cor. Cases, 607; *Wann v. Tel. Co.,* 37 Mo. 482. (3) By the message blank on which the dispatch in question was written the plaintiff agreed that the defendant, when necessary, should forward the message as his agent without liability over the line of any other company, and in this case there would

have remained to the addressee so short a time in which to prepare for departure and reach the train, had the message been delivered in writing by a messenger, that there arose such a necessity and emergency as justified the act of defendant's agent in forwarding the message over the line of the telephone company.. R. S. 1889, sec. 2726; *Tel. Co. v. Carew*, 15 Mich. 525; 2 Thomp. Neg. 828; *Squire v. Tel. Co.*, 98 Mass. 232; *Leonard v. Tel. Co.*, 41 N. Y. 544. (4) A telegraph company is not a common carrier, and is not bound to make a physical delivery of a written message by messenger; but fulfills its duty in communicating to the addressee the exact words and information contained in the written message of the addressor, and in doing so may deliver by forwarding the same as provided by the statute over the line of a telephone company. See sections 7 and 8 of chapter 156 on telegraph companies, 2 Revised Statutes, 1855, page 1522. R. S. 1889, secs. 2725, 2726; cases *supra*. (5) Even if it should be held that a telegraph company should deliver a written message, yet an addressee can prescribe the manner of delivery which he will accept, or can waive the right to receive such message in writing, and have the same forwarded by telephone, and the manner of his acceptance of delivery is binding upon the addressor. As the addressee was an inmate of his brother's home and residence, and the latter had directed the telegraph company both orally and in writing not to deliver telegrams by messenger at his house on Sunday, but to telephone the same, the company had no right to deliver the message in question by messenger, but it was its duty to forward the same over the telephone line. The addressee, in directing a child of tender years to receive a telegram forwarded to him over a telephone line, and in failing, when he learned it was a death message so received, to have the same repeated or verified, was guilty of negligence which directly contributed to the failure to receive the message correctly, and all the more was he guilty of

such negligence in permitting the use of the telephone, if the same was hazardous and unreliable. ( 6 ) The penalty provided by section 2725 of the Revised Statutes of 1889 has application only to the transmission of dispatches by the apparatus known as the electric telegraph between the sending and receiving offices, and such section being to no extent remedial, but exclusively and highly penal, cannot be so enlarged by construction as to include the act of delivery, which is accomplished through a wholly different agency, and which is recognized as different and distinct by section 2729, wherein for failure or neglect to deliver there is given a right to recover damages not contemplated by the common law. *Tel. Co. v. Wilson,* 16 Am. & Eng. Cor. Cases, 257; s. c., 108 Ind. 308 ; s. c., 9 N. E. Rep. 172, and cases cited; *Tel. Co. v. Axtell,* 69 Ind. 199 ; *Kreitzer v. Woodson,* 19 Mo. 327 ; *Howell v. Stewart,* 54 Mo. 400 ; *Fusz v. Spaunhorst,* 67 Mo. 256 ; *Mann v. Railroad,* 87 Mo. 278 ; *State v. Bryant,* 90 Mo. 534. ( 7 ) If section 2725 is to be so liberally expanded by construction as to supply the absence of the word delivery, yet the penalty therein provided cannot be recovered where a telegraph company promptly transmits a dispatch and exercises good faith and impartiality in attempting to deliver it, but fails to properly deliver it. *Burnett v. Tel. Co.,* 39 Mo. App. 599. ( 8 ) Section 8925, of the Revised Statutes of 1889, does not abrogate the common-law presumption that a child under the age of fourteen years is not a competent witness, and the deposition of such child is not competent testimony, and the capacity or incapacity of a child to testify is a question of fact which the trial judge must determine upon a personal inspection and an oral examination. *State v. Scanlan,* 58 Mo. 205 ; *State v. Jefferson,* 77 Mo. 138 ; *State v. Clinton,* 67 Mo. 380; 1 Greenl. Ev., sec. 367. ( 9 ) In passing on this case, in view of the finding of facts made by the trial court under the provisions of section 2135 of the Revised Statutes of 1889, the appellate court is not

bound by any finding of the court below in conflict with the undisputed testimony in the case, and any issues. of fact pertinent to the decision of the cause omitted or not contained in the finding of facts may be made from the record entirely independent of such finding. *Tel. Co. v. Trissal,* 89 Ind. 566.

*R. B. Bristow,* for respondent.

BIGGS, J.—On Sunday, the twelfth day of May, 1889, the plaintiff delivered to the defendant's agent at Monroe City the following telegraphic message, to be transmitted over the defendant's line and delivered by it to the addressee in the city of Hannibal.

"5-12-'89.

" *S. J. Harrison, Hannibal, Mo.:—*

"Come up; my boy is dead; funeral at three o'clock.            J. P. BRASHEARS."

It is conceded that the dispatch was promptly and correctly transmitted over the wires, and was received at Hannibal at 9:38 A. M. Upon the receipt of the message the defendant's agent in charge of its Hannibal office, instead of sending the dispatch to the addressee by a messenger, attempted to communicate it to him through a telephone. The court found as a fact that, instead of the dispatch sent, the addressee received the following:

"PALMYRA, MISSOURI, May 12, 1889.

" *Mr. Samuel J. Harrison, Hannibal, Mo.:—*

"My boy died last night at three o'clock. Please come up.

"[ Signed.]            C. J. HEIBEL."

The plaintiff claims that the failure of the defendant to deliver the message was a violation of section 883 of the Revised Statutes of 1879, then in force, and the present action is to recover the penalty provided for in the section. The cause was submitted to the court without

the intervention of a jury, and the finding and judgment were for the plaintiff. The defendant has appealed.

At the request of the defendant the court, under section 2135, of the Revised Statutes of 1889, stated in writing its conclusion of the facts. This statement is quite full and satisfactory, and we have concluded to set it out in full in this opinion.

"In this cause, under section 2135 of Revised Statutes of 1889, the defendant requests the court to state in writing the conclusion of facts found by the court.

"Generally the court finds that by the greater weight of evidence, to the reasonable satisfaction of the court, the plaintiff has sustained the averments of his petition.

"The court finds that, as a work of necessity and charity, the telegram alleged was prepaid and sent on Sunday.

"The court finds that said telegram duly reached the defendant's operator at Hannibal. But the court finds that said telegram was never delivered to the person addressed, and that, in failing to deliver the same as prescribed in the next to the last sentence in the printed heading of said telegram, the defendant was guilty of neglect, and simply neglect.

"There was on the part of defendant no want of partiality, and no want of good faith. Prior and up to, and at, the time complained of, there existed in the city of Hannibal, Missouri, a telephone system with one private wire thereof extending to the telegraph office of the defendant on the corner of Main and Broadway streets, and another private wire thereof, extending to the private residence of Mr. G. M. Harrison, and a public wire thereof extending to Palmyra, Missouri. From the testimony of the office employes of the defendant's Hannibal office it is found that, prior to the time complained of, Mr. G. M. Harrison had orally and in writing on file in said office notified and ordered

said employes not to deliver written telegrams at his home on Sunday. Mr. G. M. Harrison was a practicing attorney at law, and he was the attorney of Mr. Charles J. Heibel, who had a son under sentence in the jail at Palmyra, Marion county, Missouri. This son was understood to be in delicate health, and on said grounds a pardon had just been secured by Mr. George M. Harrison as said attorney. The latter's brother, Mr. Samuel J. Harrison, was a justice of the peace at Hannibal, Missouri, and Mr. Samuel J. Harrison was by marriage an uncle of plaintiff's. . He had in former years been a near neighbor of plaintiff, and between him and plaintiff friendly relations subsisted. At the time of the telegram Mr. Samuel J. Harrison made his home at the residence of said brother, and he was aware of the proceedings in the case of C. J. Heibel's son. The plaintiff resided at Monroe City, Monroe county, Missouri, where on Saturday, May 11, 1889, the plaintiff's infant child died. On that day plaintiff sent several telegrams, giving notice of the bereavement, but by inadvertence the plaintiff omitted to advise Mr. Samuel J. Harrison until Sunday morning following.

"The regular train of the Missouri, Kansas & Texas Railway Company was expected to leave Hannibal for Monroe City late in the forenoon of said Sunday. Early on said Sunday morning, the plaintiff duly paid for and forwarded through the agent of defendant at Monroe City, addressed to Samuel J. Harrison, a telegram under defendant's printed stipulations, all in words and figures as follows :

"'5-12-'89.

"'*S. J. Harrison, Hannibal, Mo.:*—

"'Come up; my boy is dead; funeral at three o'clock. J. P. BRASHEARS.'

"The defendant had no wire to Hannibal. Its communication with Hannibal was through either Quincy, or Kansas City and St. Louis. Quincy failed to respond, but the dispatch was, *via* Kansas City and St. Louis,

received at the defendant's Hannibal office by nine o'clock the same Sunday morning. The Hannibal operator called up the telephone number for the residence of George M. Harrison. The latter's daughter, a bright and intelligent girl of fourteen [twelve] years, answered the telephone call, and through the said instrumentality she learned that a telegram of S. J. Harrison was to be communicated. The latter was in his room preparing his toilet, and he told his niece to receive the telegram through the telephone. She received it, and reported it in words and figures as follows:

" 'PALMYRA, MISSOURI, May 12, 1889.
" '*Mr. Samuel J. Harrison, Hannibal, Mo. :—*

" 'My boy died last night at three o'clock. Please come up. C. J. HEIBEL.'

"Observing that the alleged telegram was signed by C. J. Heibel and that it was from Palmyra, and being nowise concerned therein, Samuel J. Harrison regarded said telegram as intended for his brother, and gave it no further attention. Mr. S. J. Harrison did not go to Monroe City. Not till after the interment did he learn of the Monroe City message. Mr. Heibel's son survived the whole transaction. At the time involved, the residence of Mr. George M. Harrison was within the city limits, though over ten blocks distant from the defendant's Hannibal office, and a street-car line was in operation from the site of said office to the site of said residence. At said time, the defendant had an office regulation, affording free delivery to any point in the city within ten blocks of said office, and requiring the addressees within the city limits, and over ten blocks from said office, to pay an extra charge.

" This was a very reasonable regulation, but it was not in the telegram heading, and the plaintiff had no knowledge thereof and no reason to be informed thereof, and, therefore, is found to be no part of the contract with plaintiff, and not applicable to plaintiff's case.

" The defendant's contract in this case was not of that character which is the product of mutual negotiations or adjustment, but an inflexible printed form arbitrarily tendered by the defendant. This paper contains no stipulations authorizing defendant to transmit by or through the telephone. There is no testimony tending to show that the plaintiff authorized the transmittal by telephone.

"It is found that the use of telephonic connections in intra-urban service practically amounts to a collateral disclosure of the contents of a private telegram. And so far it was negligence *per se*.

"It is also found that such telephonic communication at the time involved was hazardous and unreliable. The court further finds that there was no tender of the telegram.

"Thereupon, in the respects shown by the said findings, the court finds that the defendant was guilty of negligence."

The finding also set out the printed regulations of the company's message blank which contained, among other things, the following : "And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company, when necessary to *reach its destination.* * * * Messages will be delivered free within the established free-delivery limits of the terminal office. For delivery at a greater distance a special charge will be made to cover the cost of such delivery."

It is insisted by the defendant's counsel that section 883 of the Revised Statutes of 1879 has application only to the transmission of messages by electric telegraph between the sending and receiving offices, and that, as the statute is penal, it cannot be so enlarged by construction as to include the act of *delivery*, which is accomplished through a different agency. The section reads:

"It shall be the duty of every telephone or telegraph company, incorporated or unincorporated, operating any telephone or telegraphic line in this state, to receive dispatches from and for other telephone or telegraph lines, and from and for any individual, and on payment or tender of their usual charges for transmitting dispatches, as established by the rules and regulations of such telephone or telegraph line, to transmit the same with impartiality and good faith, under a penalty of $100 for every negelct or refusal so to do, to be recovered, with costs of suit, by civil action, for the benefit of the person or persons or company sending or desiring to send such dispatch."

The defendant's construction of the statute is too narrow, and does not meet the evident intention of the law. The word "transmit" was intended not only to embrace the transmission of messages over the wires, but it necessarily includes the prompt delivery of all telegraphic communications. The electric telegraph is an expeditious mode of communicating intelligence, and by reason of this it has become an indispensable agency in conducting the commerce of the world. By reason of the great advantages to be derived from rapid communication, telegraph companies charge much more than would be required to transmit the same intelligence through the mails. Hence the legislature deemed it important, and not unreasonable, to impose a penalty on such companies for a failure to conduct their business with that dispatch and celerity which the public has a right to expect. This would certainly include the prompt delivery of messages, for it would be of little consequence to have them promptly sent over the wires, if the companies could take their own time in making deliveries. If the defendant's construction of the statute were adopted, it would be well to repeal it altogether, because it would be next to an impossibility for the sender of a message to prove that the delay was in the transmission and not in the delivery. We think

that the argument of the defendant's counsel on this question is unsound.

The next position taken by the defendant is that, under the contract with the plaintiff, it was not bound to make a physical delivery of the message by a messenger, and that it properly resorted to the telephone. We are of the opinion that this proposition cannot be successfully defended. Now let us examine into the nature of a contract between a telegraph company and the sender of a message. A telegraph company contracts with the sender to transmit the words of his message over its wires to the place of destination, and *there make a copy and deliver it to the addressee.* In making the copy, and in its delivery, the company acts as the agent of the sender. In treating of such a contract Mr. Gray in his work on communications by telegraph, page 182, said: "A telegraph company does not, as the government does, undertake to transport and deliver the paper upon which the employer writes the intelligence that he wishes to have communicated. It undertakes to transmit, with the aid of electricity, the intelligence contained in that paper to the place of destination, and there to *write it out and deliver it to the person addressed.*" This is undoubtedly the usual undertaking of a telegraph company, and, in the absence of a special contract to the contrary, anything short of it would be a failure of duty to the sender. The latter has the right to expect and demand that a copy of the message be promptly delivered to the addressee in person, if he is accessible. It follows that the attempted delivery of the message to Mr. Harrison through a telephone was not authorized by the contract between the plaintiff and defendant. If we were dealing with a case, where the transmission of the message to its destination required the use of a telephone, quite a different question would be presented. Such a case might come under, and be governed by, section 884 of the statute. This question, however, is not before us for decision,

and we do not wish to be understood as passing on it.
We merely make the observation to show that the argu-
ment made by the defendant's counsel on this section
of the statute is not applicable to this case. Here the
transmission by electric agencies had been completed,
and nothing remained but a physical delivery of the
message to the addressee.

But the defendant seeks to escape the penalty
imposed by the statute upon the ground, that the
addressee waived the right to have the message delivered
in writing. This argument might be good, if the
addressee was suing for special damages on account of
the failure to so deliver, but it is no argument against
the plaintiff's right of recovery of the penalty. The
addressee was not his agent for the receipt of the mes-
sage, and none of his legal rights could be waived by
him, in view of the fact that the right of action for the
penalty is under the statute in the sender alone. In
this connection it may not be out of place to say that
the alleged negligence of the addressee in directing a
girl of twelve years of age to receive the message could
in no way affect the plaintiff's right of recovery. If
the message had been properly tendered and the
addressee had refused to receive the same, then the
defendant would have done all it agreed to do.

It is next insisted that the defendant was excused
from making a physical delivery of the message, because
the brother of the addressee had instructed the defend-
ant's agents not to deliver messages at his house on
Sunday. There is no evidence that the plaintiff was
advised of this. If he was ignorant of the fact, we are
unable to conceive how his contract with the defendant
could be affected by it. If the addressee were suing, it
might be that the defendant, as to him, would have been
justified in waiting until the next morning to make the
delivery.

Lastly, it is contended that the defendant ought not
to be subjected to this prosecution, because the addressee

lived outside of the free delivery limits in the city of Hannibal, and that the plaintiff failed to pay the extra charge for making the delivery. We are of the opinion that this presents no defense to the action, because there is no evidence that the plaintiff knew the extent of the free delivery limits in the city of Hannibal. He probably knew where the addressee lived, and, if he did, he also knew that the place could be readily reached by a street railway leading directly from the defendant's office. Hence, there was nothing to suggest to him that he ought to provide for a special delivery.

On this point the defendant relies on the case of *The Western Union Tel. Co. v. Henderson*, 30 Am. & Eng. Cor. Cases, 615, in which the supreme court of Alabama held that, under the contract, the law imposed the duty on the sender of a message to know whether or not the addressee lived within the free delivery limits at the place of destination, and that, if he lived outside, it was the duty of the sender to notify the company and pay the extra charge for delivery. We are not prepared, nor is it necessary for us, to adopt that view of the law. In its facts that case is different from this. There it appeared that the company had by a general regulation established the free-delivery limits within a radius of half a mile from its office in all places having the population that Grand Bay had, which was the place of destination. In the present case the court found that the defendant had an office regulation at Hannibal, which confined the free delivery of messages in that city to within a radius of ten blocks from the office. It would in our opinion be quite unreasonable to expect the plaintiff to be advised of such a regulation. It would be much more reasonable to require the defendant's agents to notify a sender of a message of the free delivery limits applicable only to the place of destination.

The court allowed the deposition of a child twelve years of age to be read in evidence. At common law a

child under fourteen years was *prima facie* incapable of testifying.

The defendant's point is that this rule was not abrogated by the statute which provides that a child under *ten years* is an incompetent witness, unless the court satisfies itself by examination that such a witness is capable of receiving just impressions of the facts concerning which he is called to testify. R. S. 1889, sec. 8925. We do not think that the point is well taken. The statute must be construed to be a modification of the common-law rule.

Our conclusion is that the judgment in this case is for the right party. It will, therefore, be affirmed. All the judges concur.