### BARNES v. WESTERN UNION TEL. CO.

(Circuit Court, N. E. D. Georgia, S. D. . February 16, 1903.)

1. FOREIGN CORPORATION—ACTION AGAINST—JURISDICTION.

A corporation which is a citizen of New York, and carries on its business through an agent in the Southern District of Georgia, may be sued there by a citizen of Georgia who resides in that district, and service may be effected on the local agent.

2. TELEGRAM—FAILURE TO DELIVER—NEGLIGENCE.

Where a telegraph company accepts a message relating to the sale of a valuable horse for which an offer has been made, and fails to deliver a written copy of the message to the person for whom it was intended, although his residence is in the delivery circle of the defendant, but on the contrary sends the message by telephone to the wife of a rival horse dealer, who leaves it exposed in the public office of an inn where horse dealers congregate, and it is alleged that from the publicity thus given the sale is defeated, with loss to the sender, the questions of negligence and consequent injury are for the jury.

3. PROCESS—IRREGULARITY OF SERVICE—WAIVER.

Where a United States marshal is the plaintiff in an action, and service of process is effected by his deputy, and no actual injury results and no intentional wrong is charged, if the defendant appears by attorney and files a special appearance to deny jurisdiction, and also files a motion to dismiss for irregular service, and also a demurrer on one day, and four days later, without having a decision on these defenses, files a general demurrer and a full answer to the merits, *held* that he has waived the irregularity of process.

4. PLEADING—WITHDRAWAL—DELAY.

Where the application of an attorney for the defendant for leave to withdraw his demurrer and answer, in order to insist on the technical irregularity of service, can only serve to delay the trial of the case on the merits, the application will be denied.

(Syllabus by the Court.)

F. B. Pearce, John T. West, and E. H. Callaway, for plaintiff.
Boykin Wright, for defendant.

SPEER, District Judge. The petition in this case recites that on the —— day of July, 1900, the plaintiff was the owner of a trotting

¶ 1. See Corporations, vol. 12, Cent. Dig. §§ 2610, 2611, 2616.

horse. This horse was valuable and blooded. He was a large, heavy gelding 10 years old, and on account of his great strength, style, and general qualities was well worth $4,000. He had been trained at great pains, at an expense of $800, was in fine condition, and by the plaintiff had been placed for sale in the hands of O. Mowers, a skilled trainer and horse broker at Yonkers, one of the suburbs of New York City. The name of the horse was Mousqueton, in commemoration of the virtues of the faithful servant in Dumas' great novel, and not "Musquetoon," as supposed by the uninformed. The commission to be paid Mowers for selling Mousqueton was to be adjusted according to the price received. It is further alleged that on the —— day of July, 1900, the plaintiff received at Thomson, Ga., in said district, a telegram reading: "Can get twenty five hundred dollars for Mousqueton." This meant that the sale could be made for $3,500, of which $1,000 was to pay Mowers his commission. It turned out that Mowers had received an offer from a solvent purchaser willing to give that amount, and that the sale would have been made but for the alleged injury to the plaintiff, presently to be described. On the receipt of this telegram plaintiff immediately prepared a message substantially as follows: "O. Mowers, Yonkers, New York, I will take twenty five hundred dollars for Mousqueton if you so advise. (Signed) John M. Barnes." This message was delivered to the agent of the defendant at Thomson, Ga., and by said defendant transmitted to its agent at Yonkers, N. Y. The address of Mowers was Empire City Inn, a place of entertainment and rendezvous for horse lovers and dealers, of which he was host. The Empire City Inn was within the delivery circle of Yonkers station of the defendant, and was well known as the residence and place of business of Mowers. It is alleged that the agent at Yonkers failed to write out and deliver the said message, and that Mowers did not learn that it had been received until —— hours. Then on returning to his inn he found what purported to be the message, written upon a slip of paper, and left open and exposed to view in the public room of the inn. This message had been written out by a Mrs. Sherrier, to whom a telephone message had been sent by the agent at Yonkers. This lady, it is alleged, was the consort of a dealer and broker in horses, who was a rival of Mowers. The sending of this telephone message to Mrs. Sherrier, and the consequent exposure of the private communications of the plaintiff to his broker, was alleged to be negligent and careless. The plaintiff is not able to allege the exact language of the telephone message, but declares, in effect, that, immediately after its receipt by Mrs. Sherrier, it was generally and currently reported among the horsemen and dealers in race horses at Yonkers that he had telegraphed Mowers that he would sell Mousqueton for $2,500 rather than lose a trade. This information was at once circulated by Mrs. Sherrier and by her husband, or by her and other persons to plaintiff unknown, with the effect that the market value of Mousqueton was destroyed, and the person who had agreed to buy him for $3,500 was led to believe that the horse was worth far less than the price he had agreed to pay. This purchaser at once notified Mowers that he withdrew his offer and would not

purchase, and Mowers wrote to the plaintiff that the sale was off. Plaintiff alleges that, in consequence of this careless and negligent conduct on the part of the defendant, he lost the sale of his horse during the season of 1900, that he was put to great expense, to the amount of $500 or other like sum, in keeping and maintaining him, his market value was greatly depreciated, and since that time the plaintiff has not been able to get an offer of more than $600 for said Mousqueton. For these reasons the plaintiff claims that he has been damaged in the sum of $4,000, and brings this action on the case.

Replying to this declaration, the defendant has filed several defenses. One of these, filed on the 1st of April, 1901, was a motion to dismiss the plaintiff's petition because the court had no jurisdiction of the alleged cause of action; there was no legal process for the reason that it was directed to the marshal, who was also the plaintiff, and no legal service because this was effected by the marshal or his deputy, of the name of Hoss; the alleged agent was not a proper party on whom to make service; the defendant was not an inhabitant nor found and served in the district, and, if liable at all, is suable in the federal courts only, at the place of its domicile and residence, which is alleged to be in New York City; there is no cause of action; and because the acts set out in the petition were not the proximate cause of the alleged injury. A demurrer was filed on the same day setting out substantially the same grounds, or some of them, and no other grounds than those recited in the motion to dismiss. On the 5th of April, the defendant filed an answer, in which each paragraph of the plaintiff's declaration is answered in apt averments of defense, and many of them denied. And on the same day the defendant filed what is termed an amended demurrer. This question has been argued pro and con with abundant citation of authority, which manifests the acumen and research of the opposing counsel. The only question of difficulty arises upon the allegation of improper service.

It is urged that the court has no jurisdiction, but this contention seems untenable. The defendant corporation is a citizen of New York, and carries on its business in the Southern District of Georgia, and, it has been long settled, may be sued here by a citizen of Georgia who resides in that district. In the case of Southern Pacific Company v. Denton, 146 U. S. 202, 13 Sup. Ct. 44, 36 L. Ed. 942, it was held that a citizen of Texas who resided in the Eastern District thereof could not maintain a suit in the Western District against a Kentucky corporation, although the latter was carrying on its business in the Western District, the court declaring that the corporation "could not be compelled to answer to an action at law in the Circuit Court of the United States, except either in the state of Kentucky, in which it was incorporated, or in the Eastern District of Texas, in which the plaintiff, a citizen of Texas, resided." This decision was made necessary by the act of 1887 (Act March 3, 1887, c. 373, 24 Stat. 552 [U. S. Comp. St. 1901, p. 507]), which annulled the alternative, permitted in the earlier acts, of suing a person in the district "in which he shall be found." The plaintiff here resides, and the defendant carries on its business, in the Southern District of Georgia, in the Northeastern Division thereof, and in the county

in which the message was offered and accepted. Where a cause of action exists, service under the statute of Georgia and by the established practice of the United States courts may be effected upon its local agent. The statute (Code, § 2348) provides:

"In all suits brought under the provisions of this section, service shall be effected upon such telegraph company by leaving a copy of the writ with the agent of the company if any, if no such agent should be in the county, then at the agency or place of doing business," etc.

A similar provision (Code, § 1899) provides for service in the same manner upon any corporation doing business in this state. Here, also, the amount in controversy exceeds $2,000, exclusive of interest and costs.

Whether or not the plaintiff has a good cause of action against the defendant seems peculiarly a question for a jury. If, as alleged, plaintiff was made, by the publicity negligently given to his telegram, to appear as willing to accept from a purchaser $1,000 less than the sum for which the horse had been offered, the purchaser not understanding the arrangement as to commissions between the plaintiff and the horse broker, it may be that the jury will find such negligence as would support a right of action, if damage is shown. It has been held that, where the testimony of a physician tends to show that a surgical operation might have been avoided had he reached the patient earlier, it is not error to submit to the jury the question as to whether or not the failure of the telegraph company to properly transmit a message whereby the physician was prevented from earlier attendance was the proximate cause of the injury resulting from such operation. Western Union Telegraph Company v. Morris, 28 C. C. A. 56, 83 Fed. 992. The nature of the telegram indicated its importance. If a telegram has enough upon its face to show that it relates to the value of property offered for sale, it would seem sufficient to put the company on its guard against errors in transmission. Western Union Telegraph Co. v. Landis (Pa.) 12 Atl. 467. Nor does the telegraph company apparently perform its duty when the message is transmitted over a telephone line to a point within the accustomed circle of its delivery. The sender and the addressee of a message is entitled to the written copy of the message. Brashears v. Western Union Telegraph Company, 45 Mo. App. 433. See, also, Western Union Telegraph Company v. Fatman, 73 Ga. 285, 54 Am. Rep. 877. There are many similar precedents, but these will suffice to indicate that the plaintiff's declaration presents a case for submission to a jury.

The remaining question, as stated, relates to the validity of service. Rev. St. § 922 [U. S. Comp. St. 1901, p. 686] which is the twenty-eighth section of the act of September 24, 1789, provides that in all cases—

"When the marshal or his deputy is a party in any cause, the writs and precepts therein shall be directed to such disinterested person, as the court, or any justice or judge thereof may appoint, and the person so appointed may execute and return the same."

The object of this enactment is manifest. It is to make sure that a marshal or deputy interested cannot by a false return deprive the

opposing party of his day in court. It is not contended that any actual injury resulted to the defendant company from the fact that Deputy Marshal Hoss served the process of the court in this case. That the defendant got it is undeniable, for it has appeared by its counsel and moved not only to dismiss the case on this ground but on other grounds, but has demurred, filed an amended demurrer, and a full and formal answer to the merits. The objection, therefore, is purely technical. There is no allegation of any intentional wrongdoing on the part of the marshal or his deputy. With this service the defendant can make its defense as perfectly as if the summons had been served by a wholly disinterested party. The court therefore will not impose upon the plaintiff the unnecessary delay and expense of a further service, or the possibility of a denial of a hearing on the merits, because of this inadvertence, if in the light of the authorities this can be avoided. Fortunately we find that the question was early before the Supreme Court of the United States. In the case of Knox & Crawford v. Summers and Thomas, 3 Cranch, 496, 2 L. Ed. 510, decided for the court by Mr. Justice Bushrod Washington in 1806, we find an instructive and apparently controlling authority. There the suit was against a deputy marshal, and the writ was not directed to a disinterested person conformably to the statute, but was directed to the marshal. There, too, the defendant appeared by attorney, and the court were unanimously of opinion that the appearance by attorney cured all irregularity of process. The defendant might have appeared in propria persona and directly pleaded in abatement, but, having once appeared by attorney, he is precluded from taking advantage of the irregularity. The appearance in that case, too, was merely to pray oyer of the writ. Here, however, the defendant answered over. It is true that, in the motion to dismiss, the defendant states it appears at the first term of the court, "not for the purpose of submitting to the jurisdiction thereof, but to protest that the court has no jurisdiction in said cause, and moves to dismiss plaintiff's petition on the ground that it appears on its face that the court has no jurisdiction of the alleged cause of action or of this defendant in said cause; second and third, that there was no legal process, it being directed to the marshal and served by the deputy," etc. The special appearance, therefore, seems to relate exclusively to its denial of jurisdiction, and not to the alleged irregularity of service. It is nowhere stated that the appearance is to object that the service was irregular or invalid. A denial of jurisdiction of the subject of the action or of the person of the defendant is a ground of defense wholly distinct from that of an irregular service. The special appearance by demurrer is therefore limited to the special appearance as set forth in the motion to dismiss, and, as we have seen, this is a special appearance solely for the purpose of protesting against the jurisdiction of the court. The amended demurrer, as it is termed, is upon the ground that the damages sought to be recovered were remote and speculative; and six principal grounds, and seven subdivisions thereof, substantially attack the plaintiff's case as it appears from the declaration. While termed an amended demurrer, it is apparently an independent demurrer. It states that it is filed "by leave of the court,"

but, if any such leave was granted, the order does not appear in the record before the court. The answer filed on the 5th of April contains many grounds of defense on the merits. It is stated that it is presented subject to the motion to dismiss for want of jurisdiction and for other reasons, and the demurrer already of file in said cause not waiving but insisting thereon, but in the opinion of the court this motion to dismiss the two demurrers, and the full answer on the merits, all filed by counsel, avoid the reason of the rule announced in section 922 of the Revised Statutes [U. S. Comp. St. 1901, p. 686], for the defendant appears, with the assistance of counsel, and makes all the defense he could have made had the original service been effected by a person wholly disinterested. There is therefore no reason to quash the service. Ratione cessante, cessat ipsa lex. See Hill v. Mendenhall, 21 Wall. 454, 22 L. Ed. 616, and Edgell v. Felder, 28 C. C. A. 382, 84 Fed. 69. The defendant might very well have conformed to the rule announced in Harkness v. Hyde, 98 U. S. 476, 25 L. Ed. 237. There Mr. Justice Field remarks:

"The right of the defendant to insist upon the objection to the illegality of service was not waived by the special appearance of counsel for him to move the dismissal of the action on that ground, * * * nor, when that motion was overruled, by their answering for him to the merits of the action. Illegality in a proceeding by which jurisdiction is to be obtained is in no case waived by the appearance of the defendant for the purpose of calling the attention of the court to such irregularity; nor is the objection waived when, being urged, it is overruled and the defendant is thereby compelled to answer. He is not considered as abandoning his objection because he does not submit to further proceedings without contestation. It is only where he pleads to the merits in the first instance without insisting upon the illegality that the objection is deemed to be waived."

Construing this declaration together in its entirety, we conclude that by the words, "insisting upon the illegality," the court imports that the defendant must not only file his objection to the service, but urge it and have a decision before he answers over. This, as stated, was not done in this case. Of course, these authorities would not apply to a case where the objection was a want of jurisdiction of the person or of the subject-matter. So clearly is this distinction outlined that the Supreme Court, in Toland v. Sprague, 12 Pet. 300, 9 L. Ed. 1093, held that a party against whose property a foreign attachment has issued in the Circuit Court of the United States, although the Circuit Court had no right to issue such attachment, having appeared and pleaded to the issue, cannot afterwards deny the jurisdiction of the court. This is a leading case, and has been cited in many cases. Irvine v. Lowry, 14 Pet. 299, 10 L. Ed. 462; St. Louis Railway Co. v. McBride, 141 U. S. 131, 11 Sup. Ct. 982, 35 L. Ed. 659; Interior Co. v. Gibney, 160 U. S. 220, 16 Sup. Ct. 272, 40 L. Ed. 401. In the case last cited it was held that the defendant, having appeared and pleaded to the merits, thereby waived his right to challenge the court's jurisdiction on the ground that action had been brought in the wrong district. Many other cases might be cited. In the extensive discussion of this topic in that useful publication, the Encyclopædia of Pleading and Practice, vol. 2, pp. 632–648, inc., it is announced that procuring a consent to a continuance, filing a demurrer or any pleading to the merits, or attacking plaintiff's case in

any informal manner, or making a motion in the case limiting appearance to a specific purpose, will be held to be a general appearance for all purposes. It is further stated, as a general rule which admits of no exception, that, if the court has jurisdiction of the subject-matter, a general appearance gives jurisdiction over the person. Indeed, it has been held that where objection is made to the irregularity of service, in order to avoid a waiver thereof, the proper practice is to obtain an order of the court for leave to make a special appearance. Romaine v. Insurance Company (C. C.) 28 Fed. 625. This was a case in equity. In that case service of a subpœna outside of the judicial district evoked an extended and learned discussion of this topic by Judge Hammond, of the Western District of Tennessee.

The application of the eminent counsel for the defendant to withdraw his demurrer, and answer now of file, could only serve to delay the trial of the case on the merits. This it is the duty of the court to avoid. Indeed, it is ever the duty of the court intrusted with the administration of justice between contending parties to exercise its discretion and all of its ascertained powers to bring the parties to have the cause speedily determined on the merits. With this general purpose, and for the reasons here stated, the motion to dismiss and the demurrers are overruled and denied.