CASE 91.—ACTION BY NANNIE PRICE AGAINST THE WEST-
    ERN UNION TELEGRAPH COMPANY FOR FAIL-
    URE TO DELIVER A TELEGRAM.—April 14, 1910.

## Western Union Telg. Co. v. Price

Appeal from Logan Circuit Court.

W. P. SANDIDGE, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1. Telegraphs and Telephones—Delivery of Messages by Telephone—Obligations.—A telegraph company having a telephone in its office that will connect with the addressee of an important message, received at night, must exercise reasonable diligence to deliver the message over the telephone, or notify the addressee that it has a telegram at its office, and the fact that it has established reasonable hours of service by messengers does not relieve it from the duty of using the telephone when its messengers are absent.

2. Telegraphs and Telephones—Delivery of Messages by Telephone—Obligations.—A telegraph company owes the duty to the public of exercising reasonable diligence in transmitting and delivering in due time messages received, and though the ordinary method of delivering messages is by messengers, and though the addressee is entitled to a delivery of the telegram received, the company must use the telephone, where its business and the settled rules of law do not require it to be prepared to promptly deliver the written message by hand.

3. Telegraphs and Telephones—Delay in Delivery of Messages—Negligence—Question for Jury.—Whether a telegraph company having a telephone in its office connecting with the addressee of an important message, received at night after the departure of its messengers, exercised reasonable care in attempting to deliver the message through the telephone, or in delivering it early the next morning, held, under the evidence, for the jury.

4  Telegraphs and Telephones—Delay in Delivery of Messages—
Negligence.—Where the night operator at a telegraph office
received an important message which he did not deliver, not-
withstanding reasonable efforts so to do, he must notify the
day operator on his arrival of the message, and the day
operator must then exercise reasonable diligence to promptly
deliver it.

5  Telegraphs and Telephones—Delay in Delivery of Message—
Evidence—Instructions.—Where, in an action for delay in
the delivery of a message received at night, the evidence
showed that it was the custom of the company to deliver
messages received at night by using the telephone where
the addressee had a telephone in his residence and the mes-
sage could have been delivered to him, the refusal to charge
that the company was not required to have a messenger at
night was not erroneous because the question was not ma-
terial to the issue.

6.  Telegraphs and Telephones—Delay in Delivery of Message—
Damages.—A verdict for $955.50 awarded to a wife for mental
anguish suffered by the delay in the delivery of a message
announcing the fatal illness of her husband, and thereby
depriving her of the opportunity of reaching him until after
he had lapsed into unconsciousness, was not excessive.

BROWDER & BROWDER, A. E. RICHARDS and RICHARDS
& RONALD for appellant.

SELDEN Y. TRIMBLE, S. R. CREWDSON and TRIMBLE &
BELL for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirm-
ing.

This appeal is prosecuted from a judgment of the
Logan circuit court awarding appellee $955.50 in
damages against the appellant company for its al-
leged failure to deliver to her within a reasonable
time the following telegram: "Kansas City, Feby.
26, 1908. Mrs. E. S. Price, Russellville, Ky., Mr.
Price seriously ill. Will you come? Answer. Mrs.
H. L. Bales." The Mr. Price mentioned in the tele-
gram was the husband of appellee, and at the time

it was sent he was in Kansas City at the house of Mrs. Bales, where he became seriously ill and died on February 29, 1908. Mrs. Price and her husband were residents of Russellville, a city of 4,000 inhabitants, and had lived there in the same house some 17 years; the residence being within a few squares of the telegraph office. The telegram reached Russellville at 9:50 p. m., on the day it was sent, but it was not delivered to Mrs. Price until 5 or 10 minutes after 8 o'clock the following morning.

The evidence shows that the company had a night operator and a day operator; the latter going on duty at 7 o'clock in the morning. From 7 o'clock in the morning until 7 o'clock in the evening, it had a messenger boy to deliver messages, but did not have any messenger boy on duty after 7 o'clock in the evening or during the night. If the telegram had been delivered to Mrs. Price at any time before midnight of the day it was received, she could have left Russellville on a train due there at 1:15 a. m.; or, if it had been delivered to her before 6 o'clock the next morning, she could have left on the train due there at 7:17 a. m.; or, if it had been delivered to her shortly after 7 o'clock, she could have left on a train leaving there at 8:35 a. m. By leaving on either of these trains, in due course of travel she would have reached the bedside of her husband in time to have seen and conversed with him before he became unconscious. As it was, there was no train on which she could leave Russellville until 7:10 p. m. on the 27th and, going on this train, she did not get to the bedside of her husband until a few hours after he had become unconscious, in which condition he remained until his death.

There is evidence that it was the rule and custom of the Russellville office when telegrams were received during the night and after the departure of the messenger boy, addressed to persons who had telephones, to deliver the message to the addressee by telephone and on the following morning deliver the written message. It was also shown that Mrs. Price was at her residence during the whole of the night of the 26th of February, and that she had in the room in which she slept a Cumberland telephone, and that this telephone was also in use in the office of the telegraph company. The operator testifies that a few minutes after receiving the message he called up the telephone exchange and asked the operator to get' Mrs. Price for him, that he had an important message to deliver to her, and the telephone operator testifies that she rung up Mrs. Price's residence on two occasions shortly after receiving the request from the telegraph office, but, failing to get an answer from Mrs. Price, no further effort was made to deliver the message over the telephone. Upon this point Mrs. Price testifies that she was in the room in which the telephone was located during the whole of the night and did not go to sleep until after the hour the telephone operator said she endeavored to call her up, and that the telephone bell did not ring.

Although the company was not required to keep a messenger boy on duty during the night or obliged to send the telegram by messenger during the night, it was, under the facts of the case, its duty to make reasonable efforts to forward the message over the telephone within a reasonable time after it was received. When a telegraph company has in its office a telephone that will put it in connection with the addressee of an important telegram, received at an

hour when its messenger is absent, it should exercise
reasonable diligence to deliver it over the telephone
or notify the addressee of the fact that it has a tele-
gram at its office; and this, notwithstanding the fact
that the company may not be under any duty to have
a messenger boy at the time the telegram is re-
ceived to deliver it or be required to then deliver it
in person.    The fact that a company may establish
reasonable hours of service and be excused during
specified hours and at certain places from delivering
in person telegrams will not relieve it of the duty,
when its messenger is absent, of delivering an im-
portant telegram over the telephone, or at least of
notifying the addressee that it has an important mes-
sage for him, if it can communicate this information
from its office without incurring any cost.    Many
important telegrams are received during the night,
and at other times when the reasonable rules of the
company do not require that they should be delivered
at once by messenger; but, if the company has in its
office a telephone that will put it without expense in
communication with the addressee, it must use due
diligence to notify him by telephone of the fact that
it has the message, and, if he request it, deliver it to
him over the telephone, and the failure to do this is
negligence for which a recovery may be had if the
case is one that authorizes damages for the failure
to transmit and deliver with reasonable promptness
a message.    These corporations are public servants.
They owe a duty to the public to exercise reasonable
diligence to transmit and deliver in due time all mes-
sages received; and, when this can be done over the
telephone at no expense and without leaving the of-
fice, there is no reason why they should not be re-
quired to do it.    It is true that the ordinary method

of delivering telegrams is by messenger, and that the sendee is entitled to have delivered to him in writing the identical telegram received. But this rule of law will not and should not exonerate the company from using the telephone in cases where its business and the settled rules of law do not demand that it shall be prepared to promptly deliver the written message by hand. It cannot be successfully maintained that a company has exercised reasonable care and diligence to deliver a telegram in the proper absence of its messenger service when it fails to use for the purpose so convenient an instrument as a telephone that will connect without delay or expense its operator with the addressee. We do not mean to hold that the company under ordinary conditions or at all times may use the telephone to deliver messages without the consent of the addressee or sender and in the absence of a contract to that effect, or that it would be negligence to fail to use the telephone when the message in reasonable time could and would be delivered in writing by a messenger; but, under circumstances and conditions like those proven in this case, we hold that it is the duty of the company to make reasonable efforts to notify the addressee over the telephone of the contents of the telegram and properly a question for the jury to say whether or not the company exercised reasonable diligence in the delivery of the message.

We might, however, safely pass over the failure of the company to deliver the message on the night it was received, and put our decision upon the ground that it was negligence not to deliver it until after 8 o'clock on the following morning. It is attempted to excuse the failure to deliver the telegram earlier on the morning of the 27th upon the theory that when the

day operator came on duty it was necessary that he should check up the business before attending to the delivery of telegrams received during the night, and that as soon as this duty was performed he at once made every reasonable effort to promptly deliver this message. The argument upon this feature of the case does not impress us favorably. The night operator knew the importance of delivering promptly the telegram, and reasonable diligence required that he should have made reasonable efforts to deliver it, and, failing to do so, he should have notified the day .operator upon his arrival of the fact that the message was important and undelivered, and the day operator should then have exercised reasonable diligence to see to its prompt delivery. Whether or not the company exercised reasonable diligence to deliver it over the telephone during the night is involved in doubt, owing to the conflicting testimony of Mrs. Price and the telephone operator; and whether or .not it exercised reasonable diligence in failing to deliver it the next morning before 8 o'clock was also a question for the jury. We cannot say as a matter of law that in either of these particulars the company exercised reasonable diligence. We might, however, add that, in view of the fact that Mrs. Price was a well-known inhabitant of Russellville and her residence within a few squares of the telegraph office, and the further fact that she had in her residence the telephone in use in the telegraph office, it would seem that the company did not exercise reasonable diligence to deliver this telegram to her over the telephone during the night or in person or over the teleprone a few minutes after seven o'clock the next morning.

Western Union Telg. Co. v. Price.

Complaint is also made that the court erred in failing to instruct the jury, as requested by the company, that: "It was not the duty of the defendant telegraph company to have a messenger in its service in Russellville to carry and deliver messages during the night, and that its failure to have such messenger on the night in question was not negligence." As a statement of the law applicable to this particular case, the instruction is not objectionable, and might properly have been given; but we do not think the failure to give it was prejudicial error, in view of the fact that it was testified to by all the witnesses introduced by the company that it was the rule and custom to deliver messages received during the night over the telephone to an addressee who had a telephone in his residence, and, aside from this rule and custom, was, as we hold, a duty imposed by law upon the company. The question whether it had or had not a messenger boy on duty during the night, or whether it was or was not its duty to deliver messages by the hands of a messenger boy, was not really a material issue in the case. The message could as easily and more quickly have been delivered over the telephone than it could by the hands of the messenger boy, and the jury was authorized under the evidence to find that the company did not exercise reasonable care to deliver the telegram over the telephone during the night.

It is also assigned as error that the court was inaccurate in the use of some words in the instructions given; but in our opinion this criticism is not well founded. The instructions fairly presented to the jury the law of the case as it has been frequently declared by this court.

Other minor errors are pointed out; but they are not of sufficient importance to justify us in commenting upon them.

It is further said that the verdict is excessive; but in this we do not agree. The evidence shows that the failure of Mrs. Price to reach the bedside of her husband before he became unconscious caused her to suffer the keenest mental anguish, and, in view of the relation between the parties, her grief in failing to see and converse with him can be readily understood and appreciated.

Wherefore, the judgment is affirmed.