MARCUS EVANS, Respondent, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.*

In the Kansas City Court of Appeals, November 5, 1923.

1. **TELEGRAPHS AND TELEPHONES: Agency: Wife Held Implied Agent of Husband to Receive Message.** The wife of the sendee was the implied agent of the husband to receive a message which was of interest to both and was not strictly a business message.

2. ———: **Delivery: Company Bound to Deliver Written Copy of Message to Sendee.** Telegraph company is bound to deliver a written copy of a message to the sendee and not merely to have the intelligence or information contained in the message delivered over the telephone.

3. ———: **Delivery of Telegram Over Telephone Would Encourage Disclosure of Contents of Private Telegram in Violation of Statute.** Delivery of telegram by telephone instead of by actual delivery of written copy would encourage the collateral disclosure of the contents of a private telegram, for which section 10140, Revised Statutes 1919, provides a penalty.

4. ———: ———: **Offer of Proof That Telegram was Delivered Over Telephone to Sendee Held Properly Refused.** In a suit on the part of the sender of a telegram to recover the penalty provided in Section 10136, Revised Statutes 1919, for failure to deliver it, an offer of proof that the message was telephoned to the wife of the sendee, without asking her to consent to receive it in that way,

was properly refused, because if it were read over the telephone, unless it were shown that the wife consented to its being so delivered, it would not constitute a good delivery.

5. **EVIDENCE: Where All the Evidence was Given by Witness for Plaintiff, he was not Bound by the Most Unfavorable Testimony to Him.** Where all the evidence was given by witnesses for plaintiff, the jury could believe or disbelieve any of the witnesses, and plaintiff was not bound by the most unfavorable testimony to him.

6. ————: **In Action to Recover Statutory Penalty for Failure to Deliver Telegram Held Demurrer to Evidence Properly Overrued.** In an action to recover statutory penalty for failure to deliver telegram, where the evidence showed that company failed to deliver written copy to sendee or his agent, and that company was unable to locate sendee and did not telephone message to agent of sendee nor ask consent to telephone contents, though agent's whereabouts were known, *held* demurrer to evidence was properly overuled.

---

*Headnote 1. Telegraph & Telephone, 37 Cyc, p 1681; 2. Telegraph & Telephone, 37 Cyc, pp. 1671, 1683; 3. Telegraph & Telephone, 37 Cyc, p. 1684; 4. Telegraph & Telephone, 37 Cyc, pp. 1683, 1736; 5. Evidence, 23 C. J., Section 1791; 6. Telegraph & Telephone, 37 Cyc, p. 1709.

Appeal from Circuit Court of Linn County.—*Hon. J. E. Montgomery*, Judge.

AFFIRMED.

*Lon R. Owen* for respondent.

*Francis R. Stark, Fred S. Hudson* and *Miller, Camack, Winger & Reeder* for appellant.

BLAND, J.—This is a suit on the part of the sender of a telegram to recover the penalty provided in section 10136, Revised Statutes 1919, for failure to deliver it. That statute provides for a penalty of $300 for failure on the part of the telegraph company to "transmit and deliver the same (the telegram) to designated address and to use diligence to place said dispatch in the hands of the addressee, by the most direct means available." The case was tried before the court without the

aid of a jury, resulting in a judgment in favor of plaintiff in the sum of $300 and defendant has appealed.

The facts show that plaintiff had been arrested for a misdemeanor in the City of Marceline. His father lived in the City of Moberly. On Saturday, December 2, 1922, at 10:48 a. m. plaintiff filed for transmission with the agent of the defendant in Marceline the following telegram addressed to his father:

"Marceline Mo. 12/2/22
    4D Mo
    S-Ks-1048 AM
O. F. Evans
1017 Henry St.
Moberly Mo.
    Have trial set for 1PM come and bring lawyer Jefferies wire if can't come.
                                    MARCUS EVANS."

The message was received at Moberly at 11:14 a. m. A written copy of the message was never delivered to the sendee or his agent, but defendant's agent at Moberly called up over the phone the wife of the sendee and inquired the whereabouts of the sendee. The sendee had left for Kansas City three or four hours before the message was filed for transmission and he did not return until the following Sunday at midnight. He was a conductor of the Wabash Railroad Company. His wife told defendant's agent to call the dispatcher of the Western Division of the Wabash but the agent failed to locate the sendee. The agent afterwards called Mrs. Evans again and wanted to know if she would stand good for the phone charges, and she said that she would. The agent told her that he would send the message to the house, that Mr. Evans could not be located. Mrs. Evans replied, "that would be all right." Mrs. Evans called the telegraph office about six o'clock that evening and told the office that she would like for the message to be sent out as she wanted Mr. Evans to get it when he got home. At that time she had not received

the message. The agent replied that the messenger boy had taken it a half-hour ago and that he ought to be there with the message at most any time.

The second time the agent called, Mrs. Evans asked whom the message was from and the agent replied, "from Marcus Evans." Mrs. Evans attempted to get the telegraph office on Sunday but it was closed. She testified that the message was not read to her over the phone. She did not ask that the message be read nor was an effort made to read it to her. As before stated, a copy of the message was never delivered to anyone. The agent testified that she gave it to the messenger boy for the purpose of delivery and that she did not know what became of it; that the boy never made any report; that she asked the boy to make a report and he answered that "he didn't remember anything about it."

Defendant propounded to the agent certain questions concerning whether the telegram was read to Mrs. Evans over the telephone. The agent answered that she did read it to Mrs. Evans over the phone, but, finally, these questions were objected to and the court sustained them. Defendant's counsel then made the following offer of proof:

"We offer to show that this witness received this message at Moberly, Missouri, at about 11:20 a. m. on the morning of December 2, 1922, and that at that time she telephoned, she called the residence of O. F. Evans and Mrs. Evans answered the telephone and that at that time she telephoned to Mrs. Evans the contents of this message, telling her who it was from and read the message over the telephone to her, at 11:20 a. m. on that day; and we further offer to show by this witness that the person answering the telephone stated she was Mrs. O. F. Evans, and that she received the telegram in that way, that is to say, that this witness read the contents of the message over the telephone to her, stating who it was from and the contents of it, and made a notation at that time, that is, 11:20 a. m., that she at that hour had

telephoned the message to Mrs. O. F. Evans—made a notation on the carbon copy of the message.''

Defendant complains that the court erred in refusing to allow the offer of proof. We fail to find in the abstract of the record any ruling of the court on this offer of proof and, of course, there is no exception to show such ruling, if any. However, we think that the offer was incompetent. We agree with defendant that the wife of the sendee was the implied agent of the husband to receive the message in this case. It was certainly not strictly a business message and was of interest to the wife for the reason that the sender was not only the sendee's son but hers also, and the sendee was out of town and would not be back for two days and the message was urgent in its nature. However, it is well settled that the telegraph company is bound to deliver a written copy of the message to the sendee and not merely to have the intelligence or information contained in the message delivered over the telephone. [Brashears v. Western Union Tel. Co., 45 Mo. App. 433; Barnes v. Western Union Tel. Co., 120 Fed. 550, 553; Western Union Tel. Co. v. Pearce, 95 Tex. 578; Western Union Tel. Co. v. Price, 137 Ky. 758, 763; Jones on Telegraph and Telephone Companies, sec. 298, p. 416.] Jones stated the rule as follows:

''It is incumbent upon a telegraph company, as one of its essential duties, to deliver to the addressee a written copy of the telegram. This is always the best means by which the exact words of the message may be delivered, in order that the addressee may act thereon. It would be very difficult for operators or messengers to understand and remember the contents of all messages received by them during their daily course of business. Their minds being taxed with other business, it would be impossible for them to remember exactly the wording of any particular message, especially where they are not further interested in it than that of receiving it as all others; and when they have no knowledge—and it is

presumed that they have none—of the business about which the message is sent, they surely could not understand it as well as the party to whom it was addressed. For these reasons, the best means of delivering the exact words of a message is by delivering a written copy of the message. Furthermore, the sendee having this written copy before him is much more capable of advising himself how to act upon same. By having a written copy of the telegram, the errors or the inaccuracies which may be made in the transmission could be shown more easily by comparing this copy with the one delivered to the company for transmission. It is true that the sendee may waive this duty of the company, as by granting it the right to deliver the message over a telephone line; but none save messages addressed to the sendee could be waived. If it were only delivered to him in care of another he could not waive this duty, but the same would have to be delivered in writing."

The author might have given another reason for requiring delivery of a written copy of the message, for to permit a delivery otherwise would encourage the collateral disclosure of the contents of a private telegram. For the doing of this our statute provides a penalty. [Sec. 10140, R. S. 1919.]

It is stated in the quotation from Jones, supra, that the sendee may waive delivery of a copy of the message and agree that it may be delivered over the telephone. But the St. Louis Court of Appeals in the Brashears case, l. c. 444, said that if the sendee were suing it might be successfully urged that he could waive delivery of a copy of the telegram, but where the sender was suing the sendee could not waive any of the rights of the sender. On examining the cases cited by Jones in support of the text, we find that they are cases where the sendee was suing and not the sender. However, it is not necessary for us to pass upon the point as to whether the sendee may waive the rights of the sender to have a copy of the message delivered in writing, for the rea-

son that even if the sendee may do so, the offer of proof was not sufficient. Defendant in that offer simply attempted to show that the company telephoned the message to Mrs. Evans without asking her to consent to receive it in that way. It should have first asked her if she would receive the message by telephone instead of reading it without further ado. The fact is that defendant in its brief entirely overlooks the fact that a message may not be delivered by telephone without the consent of the sendee or his agent, but insists that the company has a right to call up the sendee or his agent and deliver the message in that way. If this were true and the receiver of his agent refused to consent to the company's offer to read it over the telephone, the offer to so read would constitute a good delivery. This, of course, is not the law.

Of course, we are not dealing with a case where the delivery of the message required the use of a telephone. There is no contention here that there was any such requirement or that the sendee lived out of the free delivery zone. From all the evidence it would appear that he lived in the free delivery zone, for the reason that the company immediately upon receipt of the message delivered it to its messenger boy for delivery. No reason is given or excuse attempted for the failure to deliver a written copy of the message to sendee's wife at his residence except the claimed offer to deliver it over the telephone, or the testimony that it was read, which was denied. As before stated, even were it read over the phone, unless it were shown that Mrs. Evans consented to its being so delivered, it would not constitute a good delivery even under the rule stated by Jones. It is true that all of the evidence was given by witnesses for plaintiff and that defendant put no witness on the stand. But the jury could believe or disbelieve any of the witnesses and plaintiff was not bound by the most unfavorable testimony to him. [Bond v. Railroad, 110 Mo. App. 13.] The demurrer to the evidence was properly overruled.

The judgment is affirmed. All concur.